Martin E. Rose (CA Bar # 62558)
Sean M. Whyte [*Pro Hac Vice Pending*]
FROST BROWN TODD, LLC
3500 Maple Avenue, Suite 1200
Dallas, Texas 75219
Telephone: (214) 545-3472
Facsimile: (214) 545-3473
Email: mrose@fbtlaw.com
Email: swhyte@fbtlaw.com

John W. Shaw (CA Bar #82802)
SHAW, KOEPKE & SATTER
23326 Hawthorne Boulevard, Suite 320
Torrance, California 90505
Telephone: (424) 738-5561
E-mail: jshaw@sksattorneys.com

Attorneys for Defendant
ELIXINOL LLC

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE MCCARTHY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELIXINOL LLC, a Colorado Limited Liability Company,<br><br>Defendant. | Case No. 5:19-cv-07948-SVK<br><br>**DEFENDANT ELIXINOL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MEMORANDUM OF AUTHORITIES**<br><br>Date: May 28, 2020<br>Time: 1:30 P.M.<br>Ctrm.: 8<br>Judge: Hon. Lucy H. Koh<br><br>Complaint Filed: December 4, 2019 |

i

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 28, 2020 at 1:30 P.M., or as soon thereafter as the matter may be heard, before the Honorable Judge Lucy H. Koh in Courtroom 8, United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant ELIXINOL LLC ("Elixinol" or "Defendant") will move the Court for an order dismissing with prejudice Plaintiff Michele McCarthy's Complaint (ECF No. 1) and each claim alleged therein.

This motion is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and is based on the following grounds:

1.      Plaintiff's unsupported legal conclusion that Elixinol's Products are "illegal" or "illegally labeled" is false;

2.      Plaintiff fails to plead sufficient facts to show that she is entitled to relief for each of her claims, and her fraud-based claims are not pleaded with the requisite specificity;

3.      Each of Plaintiff's equitable claims are precluded, as she has an adequate remedy at law;

4.      Plaintiff's claims are expressly preempted by federal law for which the United States holds exclusive jurisdiction; and

5.      Plaintiff's claims are premature, as the FDA has not completed the regulatory rule-making process. This means Plaintiff's claims should be dismissed or, in the alternative, a stay issued over these proceedings.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities filed concurrently, any matters upon which the Court may take judicial notice, the pleadings and documents on file in this case, and any such other oral or documentary evidence as may be presented at the hearing on this motion.

Dated: February 7, 2020.          FROST BROWN TODD LLC


                                  By:  */s/ Martin E. Rose*

                                  Martin E. Rose
                                  Sean M. Whyte

                                  SHAW, KOEPKE & SATTER

                                  By:  */s/ John W. Shaw*

                                  John W. Shaw

                                  Attorneys for Defendant
                                  ELIXINOL LLC

iii

1

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .................................................................... ii

TABLE OF AUTHORITIES ............................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

  I.   INTRODUCTION ................................................................................. 1

  II.  BACKGROUND .................................................................................. 3

  III. LEGAL STANDARD ......................................................................... 4

  IV. All Plaintiff's claims must be dismissed, because they are based on the false premise that Elixinol's Products are "illegal." ..................................... 5

    A. Plaintiff asserts the false and unsupported legal conclusions that Elixinol's Products are illegally labeled and illegally misbranded. ........................... 5

    B. The FDA's statements are not law ................................................. 6

    C. Elixinol's Products are not drugs. ................................................. 8

  V.  Plaintiff's claims must be dismissed for improper factual basis. ............. 10

    A. Plaintiff improperly plead the factual basis for the UCL claim. ............. 10

    B. Plaintiff improperly plead the factual basis for the FAL claim. ............... 13

    C. Plaintiff improperly plead the factual basis for the CLRA claim. ............ 14

    D. Plaintiff fails to properly plead any factual basis to support a claim for breach of express warranty. ......................................................... 15

    E. Plaintiff fails to properly plead any factual basis to support a claim for breach of implied warranty of merchantability. ................................. 16

    F. Plaintiff fails to properly plead any factual basis to support a claim for declaratory judgment. ............................................................... 18

  VI. Even if Plaintiff had properly pleaded claims under the UCL, FAL, and CLRA, those claims are precluded because she also alleges claims which provide an adequate remedy at law ............................................................ 19

  VII. Even if Plaintiff had properly pleaded her claims, the statutes relied on in Plaintiff's Complaint are expressly preempted. ...................................... 20

    A. Express preemption applies to the 2018 Farm Bill. ........................... 21

    B. Plaintiff's proposed application of the statutes invoked in each of Plaintiff's claims is expressly preempted. ....................................... 21

    C. Plaintiff's claims are also preempted because the United States holds exclusive jurisdiction to enforce the FD&C. ................................... 22

  VIII.Every one of Plaintiff's claims is premature and the Court should dismiss Plaintiffs' claims or, in the alternative, stay all proceedings. ................... 23

  IX.  CONCLUSION .................................................................................. 25

**DEFENDANT ELIXINOL LLC'S MOTION TO DISMISS**
**CASE NO. 5:19-CV-07948-SVK**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                          **Page(s)**

3
*Adams v. Johnson*,
4
   355 F.3d 1179 (9th Cir. 2004) ........................................................ 5

5
*Am. Suzuki Motor Corp. v. Superior Court*
6
   (1995) 37 Cal. App. 4th 1291 .................................................... 17

7
*Andrade v. Pangborn Corp.*,
   No. C 02-3771 PVT, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004)................ 17
8

9
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................ 4, 5, 11, 12, 15
10

11
*Becerra v. Gen. Motors LLC*,
   241 F. Supp. 3d 1094 (S.D. Cal. 2017)............................................ 17

12
*Bell Atl. Corp. v. Twombly*,
13
   550 U.S. 544 (2007).................................................................. 4

14
*Buckman Co. v. Plaintiffs' Legal Comm.*,
15
   531 U.S. 341 (2001).............................................................. 22, 23

16
*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
17
   467 U.S. 837 (1984)................................................................ 6, 7

18
*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) .................................................... 23, 24
19

20
*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ....................................................... 5
21

22
*Essence Imaging, Inc. v. Icing Images LLC*,
   No. 2-13-cv-5449-CAS(PLAx), 2014 WL 1384028 (C.D. Cal. Apr. 9, 2014) 13

23
*In re Ford Tailgate Litig.*,
24
   No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014).............. 19

25
*Franklin v. Gwinnett Cnty. Pub. Schs.*,
26
   503 U.S. 60 (1992)................................................................ 19

27
*Gardner v. Safeco Ins. Co. of Am.*,
   No. 14-cv-02024, 2014 WL 2568895 (N.D. Cal. June 6, 2014) .................... 19
28

v

*Gitson v. Trader Joe's Co.*,
No. 13-CV-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ............ 7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ........................................................................ 20

*Inst. for Fisheries Res. v. Hahn*,
No. 16-CV-01574-VC, 2019 WL 6907079 (N.D. Cal. Dec. 19, 2019) ............ 7

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................ 12

*Lippitt v. Raymond James Fin. Svcs., Inc.*,
340 F.3d 1033 (9th Cir. 2003) ............................................................ 10

*Littlehale v. Hain Celestial Grp., Inc.*,
No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ............ 15, 16

*Maneely v. Gen. Motors Corp.*,
108 F.3d 1176 (9th Cir. 1997) ...................................................... 15, 16

*Marshall v. Danone US, Inc.*,
402 F. Supp. 3d 831 (N.D. Cal. 2019) ................................................ 19

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. 2016) ........................................ 10, 12, 19

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017) .......................................... 19, 20

*Nutrition Distribution, LLC v. IronMag Labs, LLC*,
723 F. App'x 397 (9th Cir. 2018) ...................................................... 25

*Perez v. Nidek Co., Ltd.*,
711 F.3d 1109 (9th Cir. 2013) ............................................................ 22

*Richter v. CC-Palo Alto, Inc.*,
176 F. Supp. 3d 877 (N.D. Cal. 2016) ................................................ 14

*Robinson v. HSBC Bank USA*,
732 F. Supp. 2d 976 (N.D. Cal. 2010) ................................................ 13

*S.E.C. v. Rind*,
991 F.2d 1486 (9th Cir. 1993) ............................................................ 20

vi

*Sanford v. MemberWorks, Inc.,*
   625 F.3d 550 (9th Cir. 2010) ............................................................ 12

*Sierra Club v. U.S. EPA,*
   671 F.3d 955 (9th Cir. 2012) ..........................................................6-7

*Snyder v. Green Roads of Fla. LLC,*
   No. 0:19-CV-62342-UU, 2020 WL 42239
   (S.D. Fla. Jan. 3, 2020) .............................................. 2, 8, 23, 24, 25

*Stearns v. Select Comfort Retail Corp.,*
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................ 15

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.,*
   307 F.3d 775 (9th Cir. 2002) ...................................................... 23, 24

*Ting v. AT&T,*
   319 F.3d 1126 (9th Cir. 2003) .......................................................... 21

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) .......................................................... 12

*Victor v. R.C. Bigelow, Inc.,*
   No. 13-cv-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ......... 13

*Zapata Fonseca v. Goya Foods Inc.,*
   No. 16-cv-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...... 19, 20

**Statutes**

7 U.S.C. § 1639o(1) ................................................................... 21

7 U.S.C. § 1639r(c)(1),(3)(A)-(B) ....................................................... 24

7 U.S.C. § 5940 (codification of the Agricultural
   Act of 2014 ................................................................... 1, 7, 21

21 U.S.C. § 301, 321, 337, the "Food, Drug, &
   Cosmetics Act" (FD&C) ......................................................... 10, 22, 23

Agriculture Improvement Act of 2018 (the "2018
   Farm Bill"), Pub. L. No. 115-334 §§ 10113-10114,
   132 Stat. 4490, 4909-14 (2018) .................................... 1, 2, 21, 22, 24

**DEFENDANT ELIXINOL LLC'S MOTION TO DISMISS**
**CASE NO. 5:19-CV-07948-SVK**

**Other Authorities**

21 C.F.R. § 10.115 ......................................................................................... 7

21 C.F.R. § 314 Title 21 – Food & Drugs ........................................................ 8

FDA APPROVES FIRST DRUG COMPRISED OF AN ACTIVE
    INGREDIENT DERIVED FROM MARIJUANA TO TREAT
    RARE, SEVERE FORMS OF EPILEPSY, https://www.fda.
    ov/news-events/press-announcements/fda-approves
    -first-drug-comprised-active-ingredient-derived-
    marijuana-treat-rare-severe-forms (last visited
    Jan. 29, 2020) .......................................................................................... 9

FED. R. CIV. P. 8(a) ......................................................................................... 4

FED. R. CIV. P. 9(b) ................................................................................. 12, 13

FED. R. CIV. P. 12(b)(6) ....................................................................... 2, 4, 23

https://www.fda.gov/news-events/press-announcements
    statement-fda-commissioner-scott-gottlieb-md-signing
    agriculture-improvement-act-and-agencys (last visited
    Jan. 29, 2020) ............................................................................ 2, 7, 8, 24

https://www.fda.gov/news-events/public-health-focus/fda
    regulation-cannabis-and-cannabis-derived-products-
    including-cannabidiol-cbd (last visited Jan. 29, 2020) ......................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Michele McCarthy ("Plaintiff") filed a purported nationwide class action alleging that Elixinol LLC ("Elixinol")—a hemp-extract company—sold illegal products to consumers. Plaintiff grounds her Complaint on the legal conclusion that Elixinol labeled its products as illegal dietary supplements or illegal misbranded drugs based on recent statements issued by the United States Food and Drug Administration ("FDA"). Plaintiff's legal conclusion is false and fails to state a claim for which relief can be granted.

Plaintiff attempts to take advantage of the current regulatory uncertainty regarding cannabidiol ("CBD") extracted from hemp plants. This uncertainty was created when the United States Congress made hemp legal before the FDA determined how or even whether it would regulate hemp-extract products. Importantly, the 2014 Farm Bill made hemp containing not greater than 0.3 percent of delta-9 tetrahydrocannabinol ("THC," the intoxicating compound in the genus *Cannabis*) legal as an agricultural commodity and the 2018 Farm Bill made the transfer of hemp and hemp-derived products across state lines for commercial or other purposes legal. 7 U.S.C. § 5940 (codification of the Agricultural Act of 2014, hereinafter the "2014 Farm Bill"); Agriculture Improvement Act of 2018 (hereinafter, the "2018 Farm Bill"), Pub. L. No. 115-334 §§ 10113-10114, 132 Stat. 4490, 4909-14 (2018). It also puts no restrictions on the sale, transport, or possession of hemp-extract products, such as CBD, so long as those items are produced in a manner consistent with the law. *Id*. In short, hemp and CBD products do not induce intoxication and are explicitly legal to sell under federal law. While the 2018 Farm Bill allowed the FDA to retain jurisdiction over regulating hemp-extract products, the FDA has not made any final regulatory rulings or laws related

to hemp extracts.[1]

An uncertain regulatory landscape should not permit Plaintiff to enforce nonbinding FDA actions as if they have the force of law when they do not. For just these reasons, one Federal District Court has already stayed a CBD class action until the FDA provides binding regulatory rulings on hemp-extract products.[2]

The Complaint alleges consumer-fraud claims,[3] breach of warranty claims,[4] and a request for declaratory judgment.[5] Almost all of Plaintiff's asserted causes of action rely on the false legal conclusion that Elixinol's products are illegally labeled or sold.[6] For this reason alone, Plaintiff's Complaint should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Plaintiff's Complaint should further be dismissed with prejudice or stayed on the following grounds:

1.    Plaintiff's unsupported legal conclusion that Elixinol's Products are "illegal" or "illegally labeled" is false;

2.    Plaintiff fails to plead sufficient facts to show that she is entitled to relief for each of her claims, and her fraud-based claims are not pleaded with the

---

[1] STATEMENT FROM FDA COMMISSIONER SCOTT GOTTLIEB, M.D., ON THE SIGNING OF THE AGRICULTURE IMPROVEMENT ACT AND THE AGENCY'S REGULATION OF PRODUCTS CONTAINING CANNABIS AND CANNABIS-DERIVED COMPOUNDS, https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-signing-agriculture-improvement-act-and-agencys (last visited Jan. 29, 2020).

[2] *See Snyder v. Green Roads of Fla. LLC*, No. 0:19-CV-62342-UU, 2020 WL 42239, at *6 (S.D. Fla. Jan. 3, 2020).

[3] Plaintiff's Complaint (ECF No. 1) ("Compl.") ¶¶ 43-56, California's Unfair Competition Law ("UCL") CAL. BUS. & PROF. CODE § 17200 *et seq.*; Compl. ¶¶ 57-65, California's False Advertising Law ("FAL") CAL. BUS. & PROF. CODE § 17500 *et seq.*; Compl. ¶¶ 66-72, California's Consumer Legal Remedies Act ("CLRA") CAL. CIV. CODE § 1750 *et seq.*

[4] Compl. ¶¶ 73-79, Breach of Express Warranties, CAL. COM. CODE § 2313(1); Compl. ¶¶ 80-86, Breach of Implied Warranty of Merchantability, CAL. COM. CODE § 2314.

[5] Compl. ¶¶ 87-94, Declaratory Judgment Act, 21 U.S.C. § 2201.

[6] Plaintiff's CLRA claim does not rely on the illegality of labeling but fails based on the inadequacy of the facts pled.

2

requisite specificity;

3. Each of Plaintiff's equitable claims are precluded, as she has an adequate remedy at law;

4. Plaintiff's claims are expressly preempted by federal law for which the United States holds exclusive jurisdiction; and

5. Plaintiff's claims are premature, as the FDA has not completed the regulatory rule-making process. This means Plaintiff's claims should be dismissed or, in the alternative, a stay issued over these proceedings.

## II.      BACKGROUND

Plaintiff filed this lawsuit on December 4, 2019 (the "Complaint"). *See* ECF No. 1. Plaintiff alleges that Elixinol "formulates, manufactures, advertises, and sells" CBD products throughout the United States. Plaintiff's Complaint, ECF No. 1 ("Compl.") ¶ 3. These products include "CBD Capsules," "CBD Tinctures," "Liposomes," "Respira Tinctures," "X-Pen," and "CBD Dog Treats" (collectively, the "Products"). Compl. ¶ 1. Her purported class-action complaint argues that, based on nothing more than mere FDA guidance, Elixinol's Products are "illegal," mislabeled, and falsely advertised, and that this has caused harm to herself and the public. She allegedly would not have purchased product from Elixinol—or would have purchased it but would not have paid as much—if she had known "the truth" about Elixinol's Products. Compl. ¶ 30.

Plaintiff purports to represent and bring this lawsuit on behalf of "[a]ll persons in the United States who purchased the Products," (the "National Class") and "[a]ll persons in the State of California who purchased the Products" (the "California State Subclass"). Compl. ¶¶ 31-32. Plaintiff seeks equitable relief in the form of injunctive relief, restitution, disgorgement, and a declaratory judgment, as well as legal relief in the form of actual damages, calculated as the purchase price of Elixinol's Products.

What is notable, however, are the things that Plaintiff's Complaint does *not* include. Plaintiff does not plead that:

- she visited Elixinol's website;

- she read or saw any of Elixinol's advertising;

- she purchased five out of the six Products listed in her Complaint;

- she read any of Elixinol's labels—even the one she purchased;

- she used any of the Products—even the one she purchased; or

- anyone at Elixinol ever told her a misleading or fraudulent statement about Elixinol's products.

Furthermore, Plaintiff's Complaint does not identify:

- any warranty statements—misleading, fraudulent, or otherwise—that were communicated by Elixinol or a third party;

- any unfair actions or business practices of Elixinol (other than the alleged mislabeling as a dietary supplement and misbranding as a drug);

- any physical harm sustained through use of Elixinol's products;

- any ineffective or missing ingredients in any Elixinol products; or

- how Elixinol's products are not effective.

## III.     LEGAL STANDARD

A plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). And pursuant to FED. R. CIV. P. 12(b)(6), a defendant is entitled to dismissal of an action if the plaintiff's complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires

4

1   "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

2       Though allegations of material fact are to be taken as true, not all statements

3   in a complaint receive this treatment. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,

4   1140 (9th Cir. 1996). A plaintiff's "legal conclusion [is] not entitled to the

5   assumption of truth." *Iqbal*, 556 U.S. at 680. "[C]onclusory allegations of law and

6   unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v.*

7   *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). This includes "[t]hreadbare recitals

8   of the elements of a cause of action, supported by mere conclusory statements."

9   *Iqbal*, 556 U.S. at 678.

10  **IV.    ALL PLAINTIFF'S CLAIMS MUST BE DISMISSED, BECAUSE**

11  **THEY ARE BASED ON THE FALSE PREMISE THAT**
    **ELIXINOL'S PRODUCTS ARE "ILLEGAL."**

12      **A.    Plaintiff asserts the false and unsupported legal conclusions that**

13          **Elixinol's Products are illegally labeled and illegally misbranded.**

14      Plaintiff's claims are spelled out in the Complaint's one-sentence second

15  paragraph: "Defendant's Products, however, are illegal to sell." Compl. ¶ 2. In the

16  factual allegations to the causes of action, and damages, Plaintiff states that

17  Elixinol's illegal products are the basis for her right to relief. The Complaint's

18  "Factual Allegations" section makes repeated allegations about the illegality of

19  labeling and the Products. Compl. ¶ 6 (mislabeling), ¶ 16 (misbranding), ¶ 17

20  (mislabeling), and ¶¶ 20-21 (misbranding).

21      Then, for every claim, Plaintiff pleads that the illegality of the Products gives

22  rise to some cause of action. But a plaintiff's legal conclusions are not entitled to

23  a presumption of truth, and Plaintiff's assertion of illegality is nothing more than a

24  legal conclusion that is actually false. *See Iqbal*, 556 U.S. at 680. For example,

25  Plaintiff's UCL claim asserts unlawful, unfair, and fraudulent actions (Compl.

26  ¶¶ 46-47, 51). Her FAL claim alleges illegality (Compl. ¶¶ 60, 62), as does her

27  CLRA claim (Compl. ¶¶ 68-70). Plaintiff's warranty claim similarly alleges

28

5

illegality (Compl. ¶¶ 75, 84).

Finally, Plaintiff claims her damages are the purchase price of the single Elixinol product she bought, and then states she would not have even purchased the product if she knew it was "not legally sold." Compl. ¶ 13. Per Plaintiff's logic, her damages are entirely caused by the illegality of the Products.

Plaintiff's pleadings rely on the premise that Elixinol's Products are "illegal." But these "illegal" premises are wrong. This fatal flaw means that no part of her claims can be properly pleaded, and thus each claim should be dismissed with prejudice.

### B.    The FDA's statements are not law.

Throughout the Complaint, Plaintiff relies on statements made by the FDA about CBD and its addition to human and pet food products. But none of these statements are official action by the FDA. Instead, they are merely public statements by the FDA that are not law. Plaintiff asks the Court to make law based on a press release. Agency rulemaking—and its judicial review—does not work this way. The Supreme Court has established a legal test showing when a court should defer to an agency's interpretation, holding that judicial deference is appropriate where the agency's interpretation was not unreasonable, so long as Congress had not spoken directly to the specific issue in question. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-845 (1984).

Not any agency interpretation qualifies for *Chevron* deference by a court. Agency interpretations such as those found in "policy statements, agency manuals, and enforcement guidelines" all "lack the force of law [and] do not warrant *Chevron*-style deference." *Id.* at 587. Indeed, an agency's actions are only granted *Chevron* deference when the agency has demonstrated that its actions were taken in the exercise of its rulemaking authority, such as engaging "in the process of rulemaking or adjudication that produces regulations or rulings." *Sierra Club v.*

*U.S. EPA*, 671 F.3d 955, 962 (9th Cir. 2012) (quoting *Chevron,* 467 U.S. at 843).

The FDA has not engaged in such activity here. Plaintiff alleges that "[t]he FDA has stated that CBD may not be labeled as a dietary ingredient or legally be contained within a dietary supplement." Compl. ¶ 18. This allegation is based on a questions-and-answers section on the FDA's website (the "Q&A"), which is decidedly *not* the product of formal rulemaking, as well as warning letters sent to 15 CBD companies (the "Warning Letters").[7] Compl. ¶¶ 16, 18. Notably, Elixinol did *not* receive a Warning Letter from the FDA. The Q&A emerged in 2015 as a result of a convergence of states legalizing medical and adult use of *Cannabis* and the passage of the Agriculture Act of 2014 ("2014 Farm Bill"), which legalized hemp under agricultural pilot programs. *See* 7 U.S.C. § 5940. The Q&A, the Warning Letters, and the press announcement released on December 20, 2018 (the "Statement")[8] are not final rule-making authority, and they are not law. At most, the Q&A, Warning Letters, and the Statement are guidance documents. "Guidance documents do not establish legally enforceable rights or responsibilities. They do not legally bind the public or FDA." 21 C.F.R. § 10.115(d)(1)). Simply put, a guidance document "lacks 'the force of law.'" *Inst. for Fisheries Res. v. Hahn*, No. 16-CV-01574-VC, 2019 WL 6907079, at *11, n.13 (N.D. Cal. Dec. 19, 2019). A Northern District court has recognized this, chastising plaintiffs for "plac[ing] too much reliance on [] FDA warning letters, which are 'informal and advisory.'" *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013).

Plaintiff relies on the bald legal conclusion that Elixinol's activities are illegal, without pleading a single statement showing that the FDA's activities have

---

[7] FDA REGULATION OF CANNABIS AND CANNABIS-DERIVED PRODUCTS, INCLUDING CANNABIDIOL (CBD), https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd (last visited Jan. 29, 2020).
[8] *Supra* fn. 1.

the force of law. In fact, it is clear from available evidence that the FDA has not taken any final action on the issues of adding CBD to food or the marketing of CBD as a dietary supplement because it is currently in the rulemaking process. The Statement—the underlying portions of which have been made since 2015—identified that it was not a final rule because the FDA anticipated taking *future* steps to address CBD in food and dietary supplement products more formally, stating "we intend to hold a public meeting *in the near future*," and "[w]e're committed to pursuing an efficient regulatory framework." *See supra* fn. 1 (emphasis added). And at least one federal court has stayed a purported class action and observed, "[r]egulatory oversight of CBD ingestible products, including labeling, is currently the subject of rulemaking at the FDA." *Snyder*, 2020 WL 42239, at *6.

The Complaint repeatedly references the Q&A, Warning Letters, and the Statement as if they were law. But they are not law. And because they are the bedrock of all of Plaintiff's claims, those claims must be dismissed with prejudice.

### C.    Elixinol's Products are not drugs.

Plaintiff pleads that Elixinol's Products are mislabeled and misbranded drugs. Compl. ¶ 20. This is simply a variant on the bare legal conclusion set forth by Plaintiff that the Elixinol's activities are illegal. But none of Elixinol's Products are a drug. Elixinol does not market or sell any of the Products as a drug. In order to do so, Elixinol would have to apply for FDA approval of the Products as drugs. 21 C.F.R. § 314 *et seq.* Elixinol has not done so, and nothing in the Complaint alleges otherwise. Instead, the Complaint—on its own accord and without factual pleading—attempts to proclaim the Products are drugs and that they are therefore mislabeled and misbranded because no "dosage" or instructions for use were provided. Compl. ¶ 20.

To plausibly plead this claim, Plaintiff must plead that Elixinol intended to

8

1  sell or market the Products as drugs. Plaintiff attempts to do this by referencing

2  FDA statements about other companies or CBD in general. But nothing in the

3  pleadings supports this allegation as to Elixinol. Indeed, the FDA's statements do

4  not support Plaintiff's assertion that any of the Products are a drug—a fundamental

5  component of Plaintiff's claims that the Products were misbranded, mislabeled,

6  fraudulent, or unfair drugs. Plaintiff cannot plead that Elixinol had these intentions,

7  and thus Plaintiff's pleading did not and cannot support those causes of action.

8  They must be dismissed with prejudice.

9        Further, the Complaint alleges that the CBD in Elixinol's Products is an

10  active ingredient in a drug product. Compl. ¶ 1, 19. To support this contention,

11  Plaintiff points to the FDA's approval of Epidiolex as a drug and tries to conflate

12  this with CBD. Compl. ¶ 19, n.5. The FDA has approved Epidiolex as a drug.[9] But,

13  as explained by the FDA, Epidiolex is a marijuana-based oral solution that contains

14  a purified formulation of CBD.[10] But Elixinol's Products are not made with

15  purified, isolated CBD, they are a full-spectrum hemp extract—meaning they

16  include not only CBD but dozens of other cannabinoids, terpenes, flavonoids, and

17  other hemp-extract substances not found in Epidiolex.[11] But nothing in the FDA's

18  statement addresses hemp-extract products using a broad spectrum of the nutritive

19  parts of the hemp plant like Elixinol's Products. In fact, in its statements, the FDA

20  fails to distinguish between hemp-extract and CBD-isolate products. And since the

21  FDA has not completed the regulatory rule-making process, the FDA's opinion

22

23  [9] *See* FDA APPROVES FIRST DRUG COMPRISED OF AN ACTIVE INGREDIENT DERIVED FROM

24  MARIJUANA TO TREAT RARE, SEVERE FORMS OF EPILEPSY, https://www.fda.gov/news-events/press-announcements/fda-approves-first-drug-comprised-active-ingredient-derived-

25  marijuana-treat-rare-severe-forms (last visited Jan. 29, 2020).

26  [10] *Id.* ("This is the first FDA-approved drug that contains a purified drug substance *derived from marijuana*.") (emphasis added).

27  [11] WHAT IS FULL-SPECTRUM HEMP CBD EXTRACT?, https://www.elixinol.com/education/what-is-full-spectrum-cbd-extract (last visited Feb. 7, 2020).

28

DEFENDANT ELIXINOL LLC'S MOTION TO DISMISS
CASE NO. 5:19-CV-07948-SVK

regarding hemp-extract products cannot be predicted—or properly pleaded.

The Complaint also uses the FDA statements to incorrectly plead that Elixinol's Products are mislabeled, misbranded, and that they "do not meet the definition of dietary supplement." Compl. ¶¶ 6, 16-17, 19-21. Plaintiff also alleges that Elixinol's labeling and branding misled consumers regarding ingredients and effectiveness. Compl. ¶¶ 61-62. In making these bald assertions, the Complaint is merely parroting the FDA's statement that CBD is excluded from the definition of dietary supplement. But the FDA's conclusion that CBD is excluded from the FD&C Act's ch. 675, 52 Statute. 1040 (1938) (codified as amended at 21 U.S.C. § 301 *et seq.*) ("FD&C") definition of dietary supplement is not an official action. It is merely informal, non-binding guidance, and, as discussed previously, the Court is not required to show any deference to such statements. The Complaint pleads that the Products are a drug and not a dietary supplement. These allegations are not plausible, as she cannot plead facts showing Elixinol intends to sell or market the Products as drugs. The reason for this is simple: they are not drugs.

## V.    PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR IMPROPER FACTUAL BASIS.

### A.    Plaintiff improperly plead the factual basis for the UCL claim.

To bring a claim for violation of California's UCL, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Svcs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003). This means the plaintiff must establish that the practice in question is either "(1) unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). Plaintiff alleges that Elixinol's actions are all three: unlawful, unfair, and fraudulent.

10

1

### 1. Plaintiff cannot show Elixinol engaged in unlawful business practice.

As discussed above, although Plaintiff wishes to rely on FDA language in repeatedly making the attention-grabbing assertion that Elixinol's Products are "illegal," this characterization is an inaccurate, legal conclusion. *See supra* Section IV. Plaintiff does not identify with any specificity what the unlawful practices were. Instead, Plaintiff merely lists four statutes and states that Elixinol violates them. Compl. ¶ 46. This is a legal conclusion not a factual assertion, and the court is not required to assume it is true. *Iqbal*, 556 U.S. at 680. And, in fact, it is not true, as Elixinol's actions are not forbidden by law. *See supra* Section IV. Since Plaintiff does not properly plead a claim that Elixinol engaged in unlawful business practices, her claim should be dismissed with prejudice.

### 2. Plaintiff cannot show Elixinol engaged in unfair business practice.

Plaintiff asserts that Elixinol conducted "unfair" business practice, but she fails to plead plausible facts to support this conclusory allegation. Instead, Plaintiff merely states that Elixinol's conduct was "immoral, unethical, unscrupulous, or substantially injurious," without defining those terms or providing any examples or context regarding what acts or omissions by Elixinol constitute such conduct. Compl. ¶ 47. Plaintiff realleges that Elixinol violated four statutes but does not indicate what acts or omissions by Elixinol constitute violations of those statutes. Compl. ¶ 48. Plaintiff is making a legal conclusion not a factual assertion, and the court is not required to assume it is true. *Iqbal*, 556 U.S. at 680. Similarly, Plaintiff alleges that the injury caused by Elixinol's (unspecified) actions was "substantial, and not outweighed by benefits to consumers," without any further specificity. Compl. ¶ 49. This represents simply another conclusory statement. Since Plaintiff fails to properly allege that Elixinol engaged in unfair business practices, and instead makes only "threadbare recitals of the elements" of her claims, they should

11

1    be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

2              **3.    Plaintiff cannot show Elixinol engaged in fraudulent**
3                      **conduct.**

4         Pleadings alleging fraud trigger a heightened pleading standard. A plaintiff

5    who alleges fraud must plead "with particularity the circumstances constituting

6    fraud." FED. R. CIV. P. 9(b). Thus, "[a]verments of fraud must be accompanied by

7    the 'who, what, when, where, and how' of the misconduct charged." *Kearns v.*

8    *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When fraud allegations fail

9    to meet these heightened pleading requirements, they must be "disregarded" or

10   "stripped from the claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105

11   (9th Cir. 2003). "The requirement of specificity in a fraud action against a

12   corporation requires the plaintiff to allege the names of the persons who made the

13   allegedly fraudulent representations, their authority to speak, to whom they spoke,

14   what they said or wrote, and when it was said or written." *Moss*, 197 F. Supp. 3d

15   at 1198. It is not enough to allege falsity, "[t]he plaintiff must set forth what is false

16   or misleading about a statement, and why it is false." *Id.* Further, Plaintiff's

17   pleadings must be "specific enough to give defendants notice of the particular

18   misconduct." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

19        But Plaintiff does not do this. Instead, she relies on the faulty "illegality"

20   argument. Beyond this, Plaintiff accuses Elixinol of acting "falsely, deceptively,

21   and unlawfully" without explaining the "who, what, when, where, [or] how."

22   Compl. ¶ 52; *see Kearns*, 567 F.3d at 1124. Even though she is bringing claims

23   against a corporation, Plaintiff fails to identify any individuals who made the

24   allegedly fraudulent representations, their authority to make those representations,

25   to whom those representations were made, what was said or written, and when it

26   was said or written. *See Moss*, 197 F. Supp. 3d at 1198.

27        Plaintiff's Complaint is replete with omissions that doom her case. Plaintiff

28   never states where—or even *if*—she read the allegedly false claims. Since Plaintiff

                                         12

1 fails to identify the "who, what, when, where, and how" of her claim, the
2 heightened pleading requirements of Rule 9(b) are not met, and her claims should
3 be dismissed with prejudice.

4      **B.     Plaintiff improperly plead the factual basis for the FAL claim.**

5      Plaintiff makes allegations that Elixinol both mislabeled and misadvertised
6 their Products. "[T]he FAL prohibits 'any person' with the intent to perform
7 services or to induce the public to enter into any obligation, 'to make or
8 disseminate' any statement concerning those services 'which is untrue or
9 misleading, and which is known, or which by the exercise of reasonable care
10 should be known, to be untrue or misleading.'" *Robinson v. HSBC Bank USA*, 732
11 F. Supp. 2d 976, 988 (N.D. Cal. 2010). "To prevail on a claim under the FAL, a
12 plaintiff must prove that (1) the defendant made untrue or misleading statements
13 and (2) the defendant knew, or by the exercise of reasonable care should have
14 known, that the statements were untrue or misleading." *Essence Imaging, Inc. v.
15 Icing Images LLC*, No. 2-13-cv-5449-CAS(PLAx), 2014 WL 1384028, at *2 (C.D.
16 Cal. Apr. 9, 2014). And to sustain allegations of mislabeling, a plaintiff must show:
17 (1) the labeling statements violate labeling regulations; (2) actual reliance on the
18 labeling statements when deciding to purchase the product(s); and (3) economic
19 injury. *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2016 WL 4502528,
20 at *2 (N.D. Cal. Aug. 29, 2016).

21      Plaintiff has not properly pleaded these elements. Plaintiff again relies on
22 the "illegality" of Elixinol's labeling, which is inaccurate. *See supra* Section IV.
23 Further, the Complaint never alleges that Plaintiff ever read the labels on the
24 Products, much less relied on them when making her purchase. In fact, the
25 Complaint alleges that she only purchased one of the Products. Compl. ¶ 13. The
26 Complaint never even attempts to allege facts that indicate Elixinol "knew or
27 should have known" about untrue or misleading statements, though none existed.

28

13

Plaintiff's assertions in her FAL claim are unwarranted allegations, do not give rise to a plausible claim, and should be dismissed with prejudice.

**C.      Plaintiff improperly plead the factual basis for the CLRA claim.**

"[T]o state a claim under the CLRA, a plaintiff must show that: (1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice." *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016). And any CLRA claim that is based on fraud also requires reliance. *Id.*

As noted previously, Elixinol's practices are not unlawful. *See supra* Section IV. Apart from inaccurate claims of the "false" mislabeling and advertising of Elixinol's Products, the Complaint makes no allegation of unlawful practices. Compl. ¶¶ 66-72. The Complaint cannot show exposure to the alleged unlawful business practice because it fails to allege that Plaintiff read any labels on Elixinol Products, or even that Plaintiff read the label on the singular product she purchased. Plaintiff does not allege that she observed any advertising, much less where and how she observed it, or what the advertising stated. Without unlawful practices, Plaintiff cannot plausibly plead either exposure to or damages from unlawful practices. And in addition, Plaintiff fails to even plead reliance, much less assert plausible facts that would establish it. Plaintiff does not identify what she relied on when purchasing the Elixinol product, the source of that information, or when she learned it.

Finally, the Complaint lists four statutes and makes a blanket statement that Elixinol violated them. Compl. ¶ 68. This is insufficient. The Complaint does not identify plausible facts that demonstrate Elixinol's alleged violations. The Complaint states that Plaintiff was induced to purchase and use Elixinol Products—though she only pleads that she purchased one product and never alleges she used it—but does not identify what induced her to "purchase and use"

14

the Products. Compl. ¶ 68. The Complaint does not identify statements, advertisements, or other specific action by Elixinol that would support this claim. Plaintiff's CLRA allegations offer nothing more than threadbare assertions and unwarranted inferences that fail to state a claim for relief, and her CLRA claim should be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

      **D.**    **Plaintiff fails to properly plead any factual basis to support a claim for breach of express warranty.**

In order to succeed on a claim for breach of express warranty, a plaintiff must prove that the seller "(1) made an affirmation of fact or a promise, or otherwise described the goods; (2) the statement formed part of the basis of the bargain; (3) the express warranty was breached; (4) the plaintiff was harmed; and (5) the breach of warranty was a substantial factor causing the plaintiff's harm." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).

But not every representation about a product constitutes a warranty. *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012). In order to constitute a warranty, representations regarding a product "must be specific and unequivocal." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

Here, Plaintiff claims an express warranty was created through Elixinol's labels and advertising. Compl. ¶ 74. But the Complaint never once alleges that Plaintiff ever read a label, or which label she read, or what the contents of the label were. The Complaint never identifies even a single person that Plaintiff spoke with about Elixinol's Products, their labels, their ingredients, or any warranties— express or otherwise—whether that person be a representative of Elixinol or some third party. The Complaint also does not specify what Elixinol advertising Plaintiff observed, what medium it was presented in (television, print, radio, internet, etc.), when she observed it, the contents of the advertisement, or whether that advertising

15

was created and distributed by Elixinol or by some third party. The Complaint does not offer one single "specific and unequivocal written statement" that would form an express warranty, and "mere product descriptions" are not warranties. *Maneely*, 108 F.3d at 1181; *Littlehale*, 2012 WL 5458400, at *1.

Instead, the Complaint prints pictures of Elixinol's Products, states that the labels are marked "dietary supplement" (but not alleging if, or when, Plaintiff actually read this), incorrectly applies FDA guidance, and claims that Plaintiff has been harmed. Compl. ¶¶ 17-18, 79. The Complaint fails to properly plead a single assertion upon which her claim is based and instead states that the Products "do not and cannot provide the promised benefits" and, again, incorrectly states that the Products are "illegally" labeled. Compl. ¶¶ 75-76. But a plaintiff's misapplication of non-binding FDA guidance does not create a breach of express warranty. As for the remaining elements, Plaintiff falls back on recitations of the elements and legal conclusions masquerading as factual allegations. The Complaint states that "affirmations and promises" were part of the "basis of the bargain," without attempting to explain how. Compl. ¶ 74. No mention is made of Plaintiff reading the label, what specific written "affirmations and promises" Plaintiff believed were part of the basis of the bargain, or that Plaintiff chose Elixinol's product over another brand or product because of the unspecified "affirmations or promises." And the Complaint clearly states that Plaintiff did not purchase or even use any of Elixinol's Products besides "Elixinol Pure CBD Tincture." Compl. ¶ 13. Thus, there can be no "benefit of the bargain" for any of the unpurchased and unused Products. Because of these failings, Plaintiff's claim for breach of express warranty must be dismissed with prejudice.

### E.   Plaintiff fails to properly plead any factual basis to support a claim for breach of implied warranty of merchantability.

To prove breach of the implied warranty of merchantability, the plaintiff must prove that (a) at the time of the purchase, the defendant was in the business

16

of selling the product, (b) the product was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade, (c) the plaintiff took reasonable steps to notify the defendant within a reasonable time that the product did not have the expected quality, (d) the plaintiff was harmed, and (e) the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm. *Andrade v. Pangborn Corp.*, No. C 02-3771 PVT, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (citing CACI 1231; CAL. COM. CODE § 2314).

"The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1114 (S.D. Cal. 2017). The implied warranty of merchantability "does not impose a general requirement that goods *precisely* fulfill the expectation of the buyer," an implied warranty of merchantability must only "provide[] for a *minimum* level of quality." *Am. Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal. App. 4th 1291, 1296 (emphasis added).

The Complaint never provides plausible allegations of material fact, but instead provides a bare-bones recitation of the elements. Plaintiff asserts—without explanation—that Elixinol's Products provide no benefits. Compl. ¶ 84. But, again, this is another conclusory allegation couched as a factual statement and fails to plausibly state a claim for which relief can be granted. The Complaint makes no allegation as to what benefits were expected and what benefits were not received. Plaintiff makes no facially plausible allegation that Elixinol's Products are not the same quality as others or fit for the ordinary purpose intended. Plaintiff also cannot allege that the Products do not conform to prior experience, as she alleges that she bought an Elixinol product exactly once. Compl. ¶ 13. And again, Plaintiff fails to even plead that she has purchased *any* of Elixinol's Products except for the

17

"Elixinol Pure CBD Tincture." Compl. ¶ 13. Even with that, Plaintiff does not allege she even *used* that solitary product.

Plaintiff's Complaint also fails to plead that she provided any notice—to Elixinol, the third-party website where she made the purchase, or any other party— that there were any problems with the product she purchased. And while Plaintiff was allegedly harmed in the full amount of the purchase price, the Complaint acknowledges that she believes the product has some value, as she still would have bought the Products but "would not have paid as much" if she only knew more before purchasing. Compl. ¶¶ 27, 30. Finally, Plaintiff claims the goods she received did not meet the "promises and affirmations" on the label, and they are not fit for the purpose of providing the benefits promised. Compl. ¶ 85. But Plaintiff never identifies what those "promises and affirmations" are, or what portion of the label makes those "promises and affirmations." Plaintiff's Complaint never even states that she read a label, or a website, or a fact sheet, or any other documents that would make "promises and affirmations."

Even if Elixinol did not precisely meet Plaintiff's expectation, Plaintiff does not plausibly allege that all the Products failed to provide a minimum level of quality. As a result, Plaintiff's claim for breach of implied warranties of merchantability should be dismissed with prejudice.

### F. Plaintiff fails to properly plead any factual basis to support a claim for declaratory judgment.

Plaintiff seeks a declaratory judgment under 21 U.S.C. § 2201 (the "Declaratory Judgment Act"). Compl. ¶¶ 87-94. But the pleadings again assert that Plaintiff is entitled to this relief due to the "illegal" and "unlawful" nature of Elixinol's actions. Compl. ¶¶ 92-93. This is incorrect, as discussed in Section IV. Thus, Plaintiff's pleadings fail to properly allege a right to relief under the Declaratory Judgment Act and must be dismissed with prejudice.

18

VI.   **EVEN IF PLAINTIFF HAD PROPERLY PLEADED CLAIMS UNDER THE UCL, FAL, AND CLRA, THOSE CLAIMS ARE PRECLUDED BECAUSE SHE ALSO ALLEGES CLAIMS WHICH PROVIDE AN ADEQUATE REMEDY AT LAW.**

"[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992). "Consequently 'a plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available.'" *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (citation omitted). While the traditional remedy at law is monetary damages, the traditional equitable remedy is injunction. *Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016). Where the factual predicates for plaintiff's legal and equitable claims are the same, then the equitable claims are not an alternative relief, but duplicative of the legal claims. *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014).

Northern District courts have routinely "barred claims for equitable relief—including claims for violations of California consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other claims presenting an adequate remedy at law," with courts even barring claims for restitution. *Id.*[12] This is true even if "plaintiff may have no other remedy if her other claims fail." *Munning*, 238 F. Supp. 3d at 1203.

---

[12] Here, the court compiles N.D. Cal. cases wherein plaintiffs' claims under the UCL, the FAL, and/or the CLRA were dismissed. *See, e.g., Zapata Fonseca*, 2016 WL 4698942, at *7 (dismissing claims for equitable relief under the CLRA, UCL, and FAL because plaintiff pleaded five other claims which presented her an adequate remedy at law); *Moss*, 197 F. Supp. 3d at 1203 (dismissing UCL claim where plaintiff had an adequate remedy at law in her other claims, including a breach of contract claim); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014) (same). *But see*, *Marshall v. Danone US, Inc.*, 402 F. Supp. 3d 831, 834 (N.D. Cal. 2019) (noting—and agreeing—with two outlier cases that declined to dismiss for reasons of preclusion).

A plaintiff who sufficiently pleads breach of express warranty, which allows that plaintiff to recover damages, cannot seek restitution or injunctive relief under California's consumer-protection laws. *Munning*, 238 F. Supp. 3d at 1204. Indeed, the ability to recover monetary damages for breach of warranty claims provides a plaintiff with a remedy at law, and thus precluding that plaintiff from obtaining equitable relief. *Zapata Fonseca*, 2016 WL 4698942, at *7. Because no amendment would cure those deficiencies, such claims must be dismissed with prejudice. *Munning*, 238 F. Supp. 3d at 1204.

Here, Plaintiff brings claims under the UCL, the FAL, and the CLRA. Under the UCL, she seeks only equitable relief in the form of injunctive relief and restitution.[13] Compl. ¶¶ 55-56. Under the FAL, she seeks only equitable relief in the form of injunctive relief, restitution, and disgorgement.[14] Compl. ¶¶ 64-65. And finally, under the CLRA Plaintiff seeks only equitable relief in the form of injunctive relief. Compl. ¶¶ 71-72. By contrast, Plaintiff also alleges claims for breach of express warranties and breach of implied warranties of merchantability—both claims at law which seek monetary damages. Compl. ¶¶ 79, 86. It is undisputed that the latter claims are claims at law which would allow Plaintiff to recover monetary damages. Because Plaintiff's equitable claims rely on the same facts as the legal claims, they are duplicate causes of action and must be dismissed with prejudice.

## VII.   EVEN IF PLAINTIFF HAD PROPERLY PLEADED HER CLAIMS, THE STATUTES RELIED ON IN PLAINTIFF'S COMPLAINT ARE EXPRESSLY PREEMPTED.

Because Elixinol's Products are hemp derivatives, meet the definition of

---

[13] Though restitution may be either a legal or equitable remedy, when it seeks to restore to the plaintiff funds or property in the defendant's possession, it is a claim in equity. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

[14] "[D]isgorgement is a form of injunctive relief." *S.E.C. v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993).

legal hemp products under the 2014 Farm Bill, are lawfully produced under the 2014 Farm Bill, and are moving in interstate commerce in compliance with the 2018 Farm Bill, the statutes Plaintiff seeks to apply against the Products are expressly preempted.

### A. Express preemption applies to the 2018 Farm Bill.

By virtue of the U.S. Constitution's Supremacy Clause, federal law can preempt and displace state law through express preemption. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003). "Express preemption exists where Congress enacts an explicit statutory command that state law be displaced." *Id.*

Here, the 2018 Farm Bill explicitly states that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products . . . through the State." 2018 Farm Bill, Pub. L. No. 115-334 § 10114, 132 Stat. 4490, 4914 (2018). Plaintiff alleges that the Products are available "in massive quantities . . . all over the country." Compl. ¶ 8. In her Complaint, Plaintiff seeks to infringe on the sale of Plaintiff's products "all over the country." If the state-law arguments made in the Complaint were enforced by the Court, the result would be the infringement on transportation of hemp-derived products. Since federal law preempts such action, Plaintiff's claims must be dismissed with prejudice.

### B. Plaintiff's proposed application of the statutes invoked in each of Plaintiff's claims is expressly preempted.

Without question, Elixinol's Products are hemp. The federal definition of hemp specifically includes "all derivatives, extracts, [and] cannabinoids" with not greater than 0.3% THC on a dry weight basis. 7 U.S.C. § 1639o(1). The Products are manufactured with hemp extract and contain a variety of hemp-derived cannabinoids, including CBD, but they do not contain more than 0.3% THC on a dry-weight basis.[15] Elixinol's Products constitute hemp and federal preemption

---

[15] ELIXINOL PRODUCTS PAGE, https://www.elixinol.com/all-cbd-hemp-products (last visited Feb. 2, 2020).

DEFENDANT ELIXINOL LLC'S MOTION TO DISMISS
CASE NO. 5:19-CV-07948-SVK

1    means that no state may interfere with them in interstate commerce.

2        But Plaintiff wishes to hold Elixinol liable under five California statutes.[16]

3    The statutes do not specifically regulate hemp products, but Plaintiff seeks to

4    expand their application to impose liability against Elixinol for marketing and

5    selling the Products in interstate commerce.

6        Plaintiff's proposed application of the statutes is expressly preempted. No

7    state is permitted to have its statutes applied in a way that would inhibit interstate

8    transportation of hemp-derived products. *See* 2018 Farm Bill, Pub. L. No. 115-334

9    § 10114, 132 Stat. 4490, 4914. Due to express preemption by the 2018 Farm Bill,

10   Plaintiff's claims must be dismissed with prejudice.

11       **C.    Plaintiff's claims are also preempted because the United States holds exclusive jurisdiction to enforce the FD&C.**

12

13       The United States holds exclusive jurisdiction for the enforcement and to

14   restrain violations of the FD&C. 21 U.S.C. § 337(a). Acknowledging the power of

15   this statute, the Supreme Court stated that the FD&C "leaves no doubt that it is the

16   Federal Government rather than private litigants who are authorized to file suit for

17   noncompliance . . . ." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349

18   n.4 (2001). The Ninth Circuit has unequivocally recognized that "private

19   enforcement of the statute is barred." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119

20   (9th Cir. 2013). In *Perez*, the Ninth Circuit—recognizing that the plaintiff's state-

21   law claim was in fact an attempt to enforce the FD&C—held that the state-law

22   claim was preempted. Here, Plaintiff claims that Elixinol's Products are mislabeled

23   as dietary supplements. But "dietary supplements" is a term defined by the FD&C.

24   21 U.S.C. § 321(ff); Compl. ¶ 19. Without the FD&C definition of dietary

25   supplements, Plaintiff would have no violation to allege. This means that Plaintiff's

26

27   _____

28   [16] *See* CAL. BUS. & PROF. CODE § 17200; CAL. BUS. & PROF. CODE § 17500; CAL. CIV. CODE § 1750; CAL. COM. CODE § 2313(1); CAL. COM. CODE § 2314; Compl. ¶¶ 44, 58, 67, 74, and 81.

1  claims rely on the FD&C, and they do not "rel[y] on traditional state tort law which
2  had predated the federal enactments . . . ." *Buckman*, 531 U.S. at 353. Thus, only
3  the federal government may file suit for noncompliance. *Id.* at 349 n.4.

4  **VIII.   EVERY ONE OF PLAINTIFF'S CLAIMS IS PREMATURE AND
         THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS OR, IN
5        THE ALTERNATIVE, STAY ALL PROCEEDINGS.**

6        Even if the Court declines to dismiss Plaintiff's claims under FED. R. CIV. P.
7  12(b)(6), it should dismiss them based on the primary jurisdiction doctrine.
8  Alternatively, if Plaintiffs' claims survive, the Court should stay all proceedings
9  until the FDA promulgates a final rule regarding the marketing—including
10 labeling—of hemp-extract products. At least one federal court has already issued
11 a stay under the primary jurisdiction doctrine. *See Snyder*, 2020 WL 42239, at *7.

12       "The primary jurisdiction doctrine allows courts to stay proceedings or to
13 dismiss a complaint without prejudice pending the resolution of an issue within the
14 special competence of an administrative agency." *Clark v. Time Warner Cable*,
15 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine "is properly invoked when a
16 claim is cognizable in federal court but requires resolution of an issue of first
17 impression, or of a particularly complicated issue that Congress has committed to
18 a regulatory agency." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307
19 F.3d 775, 780 (9th Cir. 2002). "[I]t is a doctrine used by the courts to allocate initial
20 decision making responsibility between agencies and courts where such
21 [jurisdictional] overlaps and potential for conflicts exist." *Id.*

22       In applying the primary jurisdiction doctrine, the Ninth Circuit considers
23 four factors: "(1) the need to resolve an issue that (2) has been placed by Congress
24 within the jurisdiction of an administrative body having regulatory authority (3)
25 pursuant to a statute that subjects an industry or activity to a comprehensive
26 regulatory authority that (4) requires expertise or uniformity in administration."
27 *Syntek*, 307 F.3d at 781. "When a district court determines that primary jurisdiction

28

                                    23

applies, it enables a 'referral' of the issue to the relevant agency," meaning, in practice, that a court should dismiss the case or stay the proceedings. *Clark*, 523 F.3d at 1115.

Here, the Court should invoke the primary jurisdiction doctrine. First, each of Plaintiff's claims turn on whether CBD may be marketed or sold in food and dietary supplement products under certain California laws. Second, the issue of CBD being marketed and sold in food and dietary supplement products clearly falls within the special competence of the FDA. Congress committed the issue to the FDA through the 2018 Farm Bill, which reserves in the FDA authority "to promulgate Federal regulations and guidelines that relate to the production of hemp." 7 U.S.C. § 1639r(c)(1),(3)(A)-(B); 2018 Farm Bill, Pub. L. 115-334 § 10113, 132 Stat. 4490, 4910.

The FDA agrees, as the Statement indicates, that "Congress explicitly preserved the agency's current authority to regulate products containing cannabis or cannabis-derived compounds," and that the FDA will continue "providing potential regulatory pathways for products containing cannabis and cannabis-derived compounds." *See supra* fn.1. Indeed, when the FDA is ready to act it will. It has already issued notices regarding

Application of the Ninth Circuit's specific factors also indicates primary jurisdiction lies in the FDA. The *Snyder* court in Florida, analyzing the same factors, recently reached this conclusion and stayed those proceedings "until the FDA completes its rulemaking regarding . . . hemp-derived ingestible products." *Snyder*, 2020 WL 42239, at *7. The court reasoned that the parties would benefit from the FDA's final regulatory action, because the Q&A and the Statement currently provide little guidance. *Id.* The court also noted not only that the issue of CBD in food and dietary supplement products is subject to the FDA's regulatory authority, but also that the FDA is already exercising its authority, which will

24

ultimately provide uniformity in administration. *Id*.

This case is identical to *Snyder*. At the heart of both cases is the issue of marketing and selling CBD in food and dietary supplement products. The FDA is aware of the issue and has expressed interest and regulatory intent. *See Nutrition Distribution, LLC v. IronMag Labs, LLC*, 723 F. App'x 397, 399 (9th Cir. 2018). The reasons that existed in *Snyder* for the application of the primary jurisdiction doctrine exist here. The Court should invoke the primary jurisdiction doctrine to dismiss Plaintiff's claims without prejudice and refer the underlying issue of CBD in food and dietary supplement products to the FDA. Alternatively, as in *Snyder*, the Court should stay all proceedings "until the FDA completes its rulemaking regarding the marketing, including labeling, of hemp-derived ingestible products." *Snyder*, 2020 WL 42239, at *7.

## IX.     CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice. Elixinol's CBD Products—which are derived from hemp—are not "illegal" as alleged by Plaintiff. In addition, Plaintiff also fails to state sufficient facts to demonstrate that she is entitled to relief and fails to plead her fraud-based claims with the requisite specificity, thus failing to meet the required pleading standard. Even if Plaintiff did properly plead her equitable consumer-fraud claims, they are preempted because she has an adequate remedy at law.

Further, Plaintiff's claims are premature and, pursuant to the primary jurisdiction doctrine, should be dismissed or, in the alternative, stayed. And finally, the statutes upon which Plaintiff's claims rely are expressly preempted by federal law. For these reasons, Elixinol asks the Court to grant its Motion to Dismiss, and to dismiss each of Plaintiff's claims with prejudice.

1

Dated: February 7, 2020.

Respectfully submitted,

2

3

By: */s/ Martin E. Rose*

Martin E. Rose

4

Sean M. Whyte

5

6

Attorneys for Defendant

ELIXINOL LLC

7

0136830.0728208   4846-1429-1635v12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28