Jonathan Shub (State Bar No. 237708)
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
E-mail: jshub@kohnswift.com
        klaukaitis@kohnswift.com

*Counsel For Plaintiff And The Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE MCCARTHY, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>ELIXINOL, LLC, a Colorado Limited Liability Company,<br><br>                                    Defendant. | Case No. 5:19-cv-07948-LHK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michele McCarthy ("Plaintiff"), through her undersigned attorneys, Barbat, Mansour & Suciu PLLC, Kohn, Swift & Graf, P.C. and Greg Coleman Law, P.C., brings this First Amended Class Action Complaint against Defendant Elixinol, LLC ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's "CBD Capsules", "CBD Tinctures", "Liposomes", "Respira Tinctures", "X-Pen", and "CBD Dog Treats" (collectively the "CBD Products" or the "Products")[1] all of which are promoted as products containing cannabidiol (CBD), for personal use and not for resale.

2.      Defendant's Products, however, are illegal to sell.

3.      Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the State of California,

4.      The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

5.      With knowledge of growing consumer demand for CBD Products, Defendant has intentionally marketed and sold illegal CBD products.

6.      Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harms the public.

---

[1] The Products contain numerous different flavors and dosages.

[2] https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd.  Last Visited on December 4, 2019.

7.      Accordingly, Plaintiff and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

8.      Plaintiff brings this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages she sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

9.      Plaintiff and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).  The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

11.     This Court has personal jurisdiction over Defendant in this matter.  The acts and omissions giving rise to this action occurred in the state of California.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant was engaged in business activities in the state of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

**PARTIES**

13.    Plaintiff Michele McCarthy is a citizen of California who resides in Boulder Creek, California.  On July 13, 2019, Plaintiff purchased Elixinol Pure CBD Tincture (300mg CBD) for $59.99 from the retail website, healthyhempoil.com.  If Plaintiff knew the Products were not legally sold in the United States, Plaintiff would not have purchased them.

14.    Defendant Elixinol, LLC is a Colorado limited liability company with its principal place of business at 10170 Church Ranch Way, ste 400, Westminster, CO 80021.

**FACTUAL ALLEGATIONS**

15.    At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.  Defendant sells the Products in all 50 states on its website and through various distributors.

**I.    DEFENDANT'S ILLEGAL PRODUCTS**

16.    On November 22, 2019, the United States Food & Drug Administration sent roughly 15 Warning Letters discussing numerous violations of CBD products, including but not limited to; Dietary Supplement Labeling, Unapproved New Drugs, Misbranded Drugs, Adulterated Human Foods, Unapproved New Animal Drugs, and Adultered Animal Foods. All of these violations of the Food, Drug and Cosmetic Act make CBD products illegal to sell.[3]

**A.    *Dietary Supplement Labeling***

17.    Defendant's "CBD Capsules", "CBD Tinctures", "Liposomes", "Respira Tinctures", and "X-Pen" products are mislabeled as Dietary Supplements or contain the illegal dietary ingredient CBD.  Every product contains a Supplement Facts section on the back of the container which is reserved for dietary supplements and explicitly state "Dietary Supplement" on the front of the packaging:

//

---

[3] *See* https://www.fda.gov/news-events/press-announcements/fda-warns-15-companies-illegally-selling-various-products-containing-cannabidiol-agency-details?utm_campaign=112519_Statement_FDA%20warns%20companies%20for%20illegally%20selling%20various%20products%20containing%20cannabidiol&utm_medium=email&utm_source=Eloqua Last visited November 27, 2019.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







18.     The FDA has stated that CBD may not be labeled as a dietary ingredient or legally be contained within a dietary supplement[4]:

- The FDA has approved only one CBD product, a prescription drug product to treat two rare, severe forms of epilepsy.
- It is currently illegal to market CBD by adding it to a food or labeling it as a dietary supplement.
- The FDA has seen only limited data about CBD safety and these data point to real risks that need to be considered before taking CBD for any reason.

19.     Defendant's Products cannot be dietary supplements because they do not meet the definition of a dietary supplement under section 201(ff) of the FD&C Act, 21 U.S.C. 321(ff).  The FDA has concluded, based on available evidence, that CBD products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B)(i) and (ii). Under those provisions, if an article (such as CBD) is an active ingredient in a drug product that has been approved under section 505 of the FD&C Act, 21 U.S.C. 355, or has been authorized for investigation as a new drug for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public, then products containing that substance are outside the definition of a dietary supplement.[5] There is an exception if the substance was "marketed as" a dietary supplement or as a conventional food before the new drug investigations were authorized; however, based on the evidence available to the FDA, the FDA has concluded that this is not the case for CBD.  The FDA is not aware of any evidence

---

[4] *See* https://www.fda.gov/consumers/consumer-updates/what-you-need-know-and-what-were-working-find-out-about-products-containing-cannabis-or-cannabis. Last Visited November 27, 2019.

[5] CBD is the active ingredient in the approved drug product Epidiolex. Furthermore, the existence of substantial clinical investigations regarding CBD has been made public. For example, two such substantial clinical investigations include GW Pharmaceuticals' investigations regarding Sativex and Epidiolex.  (*See* Sativex Commences US Phase II/III Clinical Trial in Cancer Pain and GW Pharmaceuticals Receives Investigational New Drug (IND) from FDA for Phase 2/3 Clinical Trial of Epidiolex in the Treatment of Dravet Syndrome).  The FDA considers a substance to be "authorized for investigation as a new drug" if it is the subject of an Investigational New Drug application (IND) that has gone into effect. Under 21 CFR 312.2, unless a clinical investigation meets the limited criteria in that regulation, an IND is required for all clinical investigations of products that are subject to section 505 of the FD&C Act.

1   that would call into question its current conclusion that CBD products are excluded from the

2   dietary supplement definition under sections 201(ff)(3)(B)(i) and (ii) of the FD&C Act.

3

4   20.   Further, the FDA has specifically recognized hemp seed-derived food ingredients

5   such as hulled hemp seed, hemp seed protein powder, and hemp seed oil as legal to sell based on

6   three GRAS notices.  However, the FDA notes that hemp seed-derived food ingredients contain no

7   THC or CBD.  Defendant's Products do not fall within this category.  Specifically, Defendant's

8   Products, as represented on the product labels, contain Hemp Oil (Aerial plant parts) and actually

9   infused with concentrated CBD.

10

11   21.   The labels of the CBD Products are therefore misleading because the CBD Products

12   are not dietary supplements.

13   **B.**   **_Misbranded Drugs_**

14   22.   Defendant's "CBD Capsules", "CBD Tinctures", "Liposomes", "Respira

15   Tinctures", and "X-Pen" products are also misbranded within the meaning of section 502(f)(1) of

16   the FD&C Act, 21 U.S.C. 352(f)(1), in that their labeling fails to bear adequate directions for use.

17   "Adequate directions for use" means directions under which a layperson can use a drug safely and

18   for the purposes for which it is intended. (See 21 CFR 201.5.) The Products are offered for

19   conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical

20   practitioners; therefore, adequate directions for use cannot be written so that a layperson can use

21   these drugs safely for their intended purposes. FDA-approved prescription drugs that bear their

22   FDA-approved labeling are exempt from the requirements that they bear adequate directions for

23   use by a layperson. However, your products are not exempt from the requirement that their labeling

24   bear adequate directions for use, 21 CFR 201.100(c)(2) and 201.115, because no FDA-approved

25   applications are in effect for them. The introduction or delivery for introduction into interstate

26   commerce of these misbranded drugs violates section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

27

28

**C.**    *301(II) and Adulterated Animal Foods*

23.    Defendant's use of CBD in animal foods in their "CBD Dog Treats" is a prohibited act under section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), to introduce or deliver for introduction into interstate commerce any animal food to which has been added a drug approved under section 505 of the FD&C Act or for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public. Based on available evidence, FDA has concluded that the prohibition in section 301(ll) applies to CBD, as described above.

24.    As defined in section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the term "food additive" refers to any substance the intended use of which results in its becoming a component of any animal food, unless the substance is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use, or unless the substance meets a listed exception.

25.    There is no animal food additive regulation that authorizes the use of CBD. The FDA is not aware of any information to indicate that CBD is the subject of a prior sanction (i.e., a sanction or approval granted prior to the enactment of the Food Additives Amendment of 1958 under the FD&C Act, the Poultry Products Inspection Act, or the Meat Inspection Act). There is no basis to conclude that CBD is GRAS for use in animal foods. The FDA's regulations in 21 CFR 570.30(a)-(c) describe the criteria for eligibility for classification of an animal food ingredient as GRAS. The use of an animal food substance may be GRAS based on either scientific procedures or, for a substance used in animal food before 1958, through experience based on common use in animal food.  *See* 21 CFR 570.30). There is no basis for general recognition of safety for CBD based either on scientific procedures or common use in animal food prior to January 1, 1958. Based on our review of the publicly available literature, the data and information necessary to support the safe use of CBD in animal foods are lacking. In fact, literature reports have raised safety concerns for animals consuming CBD, including, but not limited to, male reproductive toxicity and liver toxicity. Therefore, based on the FDA's review, the use of CBD in animal products does not satisfy the criteria for GRAS status under 21 CFR 570.30.

26.     Under section 409, an animal food additive is deemed unsafe unless it is approved by FDA for its intended use prior to marketing. CBD is not approved for use in any animal food. Animal food containing an unsafe food additive within the meaning of section 409 is adulterated within the meaning of section 402(a)(2)(C)(i) of the FD&C Act. Introduction of an adulterated animal food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

27.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded products under California's Sherman Laws, which adopt the federal labeling regulations as the food and dietary supplement labeling requirements of the state.[6] Cal. Health & Safety Code § 110095 ("All special dietary use regulations and any amendments to regulations adopted pursuant to the federal act, in effect on November 23, 1970, or adopted on or after that date, are the special dietary use regulations of this state."); Id. § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.")..

28.     The introduction of adulterated and misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statute cited in this First Amended Class Action Complaint.

29.     Plaintiff and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

30.     Defendant intended for Plaintiff and the Class members to be deceived or misled.

31.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiff and the Class.

---

[6] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875 *et seq.*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act.  An act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law.  *Id.* at § 110100.

32.     Plaintiff and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> **National Class: All persons in the United States who purchased the Products.**

34.     In the alternative, Plaintiff brings this action on behalf of the following State Class:

> **California State Subclass: All persons in the State of California who purchased the Products.**

35.     Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

36.     Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

37.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

38.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

39.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class consists of thousands of consumers.

40.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

41.     Common questions of law and fact that affect Class members include, but are not limited to:

a.  Whether the Products, when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use, works as advertised, marketed, and conveyed to consumers;

b.  Whether, in the course of business, Defendant represented that the Products have characteristics, uses, benefits, or qualities that they do not have when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use;

c.  Whether the claims Defendant made and is making regarding the Products are unfair or deceptive; specifically, whether the Products were illegally labeled as dietary supplements;

d.  Whether Defendant knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Products that Defendant was claiming they would receive;

e.  Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

f.  Whether Defendant knew or should have known that the representations and advertisements regarding the Products were unsubstantiated, false, and misleading;

g.  Whether Defendant has breached express and implied warranties in the sale and marketing of the Products;

h.  Whether Defendant's conduct violates public policy;

i.  Whether Defendant's acts and omissions violates California law;

j.  Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiff and the Class Members;

k.  Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Products;

l.    Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

m.    Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

42.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

43.    Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

44.    The named Plaintiff will fairly and adequately assert and protect the interests of the Class.  Specifically, she has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

b.    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.    There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

d.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

e.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.    The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CAUSES OF ACTION

### COUNT I
### California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")
### (On Behalf of the California Subclass)

45.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44, as though set forth fully herein.

46.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

47.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

48.    **Unlawful:** The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

c.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

d.    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

49.    **Unfair:** Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or

1    substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the

2    gravity of the harm to their victims.

3        50.    Defendant's conduct with respect to the labeling, advertising, and sale of the

4    Products was and is also unfair because it violates public policy as declared by specific

5    constitutional, statutory or regulatory provisions, including but not limited to the applicable

6    sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food,

7    Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

8        51.    Defendant's conduct with respect to the labeling, advertising, and sale of the

9    Products was and is unfair because the consumer injury was substantial, not outweighed by

10   benefits to consumers or competition, and not one consumer themselves could reasonably have

11   avoided.

12       52.    **Fraudulent:** A statement or practice is "fraudulent" under the UCL if it is likely to

13   mislead or deceive the public, applying an objective reasonable consumer test.

14       53.    As set forth herein, Defendant's claims relating the ingredients stated on the

15   Products' labeling and moreover that the Products are labeled as illegal dietary supplements is

16   likely to mislead reasonable consumers to believe the Products are legal to purchase.

17       54.    Defendant profited from its sale of the falsely, deceptively, and unlawfully

18   advertised and packaged Products to unwary consumers.

19       55.    Plaintiff and Class Members are likely to continue to be damaged by Defendant's

20   deceptive trade practices, because Defendant continues to disseminate misleading information on

21   the Products' packaging.  Thus, injunctive relief enjoining Defendant's deceptive practices is

22   proper.

23       56.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff

24   and the other Class Members.  Plaintiff has suffered injury in fact as a result of Defendant's

25   unlawful conduct.

26       57.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining

27   Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts

28   and practices, and to commence a corrective advertising campaign.

FIRST AMENDED CLASS ACTION COMPLAINT                                            14
CASE NO. 5:19-CV-07948-LHK

58.     Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT II**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the California Subclass)**

59.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

60.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

61.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

62.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to the ingredients and effectiveness of the Products and moreover because the Products are illegally labeled as dietary supplements.

63.     Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because she purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, contained the ingredients stated on the Products' labeling and moreover that the Products were legal dietary supplements as claimed on the Products' labeling and Defendant's website.

64.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

65.     Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

66.     As a result, Plaintiff, the California Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

67.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Subclass, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this First Amended Class Action Complaint.

<u>COUNT III</u>
**California's Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

68.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

69.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

70.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

      a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

      b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

      c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

      d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

71.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

72.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

73.     On December 9, 2019, a CLRA notice letter was served on Defendant that complies in all respects with California Civil Code § 1782(a).  Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A.**

74.     Pursuant to California Civil Code § 1780, Plaintiff seeks damages, injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

**COUNT IV**
**Breach of Express Warranties**
**Cal. Com. Code § 2313(1)**
**(On Behalf of the California Subclass)**

75.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

76.     Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements.  Cal. Com. Code § 2313(1).

77.     Defendant breached the express warranties by selling Products that do not and cannot provide the promised benefits and moreover by selling Products that are illegally labeled as dietary supplements.

78.     Plaintiff and the Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products contained and that the Products are illegally labeled as dietary supplements.

79.     That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Products.

80.     Furthermore, Defendant had actual knowledge of the defect in the Products purchased by Plaintiff, as well as the Products purchased by other members of the Class, because it had actual knowledge of the nature, ingredients and qualities of the ingredients in its Products by virtue of its own Products' testing and it knows that the affirmations and representations it makes concerning the nature, benefits, ingredients and quantities on the Products' labeling and Defendant's website and advertising is false.

81.     As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## COUNT V
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314
### (On Behalf of the California Subclass)

82.     Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

83.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class that, among other things, the Products were labeled as legal dietary supplements.

84.     Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

85.     Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

86.     However, Defendant breached that implied warranty in that the Products provide no benefits, as set forth in detail herein, and moreover that the Products are actually labeled as illegal dietary supplements.

87.     As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

88.     Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

**COUNT VI**
**Declaratory Relief Under the Declaratory Judgment Act**
**(On Behalf of the Nationwide Class and/or**
**the California Subclass)**

89.     Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

90.     Plaintiff brings this cause of action on behalf of the Class and/or the California State Subclass.

91.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

92.     Pursuant to 28 U.S.C. § 2201, et seq., there is an actual controversy between Defendant and Plaintiff concerning whether:

        a.     Defendant has misrepresented the nature, ingredients and effectiveness of the Products; and

        b.     Defendant knew or should have known of the misrepresentations regarding the efficacy of the Products.

93.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

94.     Despite findings which have proven Defendant's representations false, Defendant continues to represent the nature, ingredients and effectiveness of the Products, specifically

1  labeling the Products as illegal "dietary supplements" and has otherwise failed to correct those

2  misrepresentations.

3        95.    Accordingly, based on Defendant's repeated and continued misrepresentations,

4  Plaintiff seeks a declaration that Defendant has misrepresented the nature, ingredients and

5  effectiveness of the Products and that its actions are unlawful.

6        96.    The declaratory relief requested herein will generate common answers that will

7  settle the controversy related to the misrepresented labeling of the Products.  There is an economy

8  to resolving these issues as they have the potential to eliminate the need for continued and repeated

9  litigation.

10  **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action

12  and for judgment to be entered against Defendant as follows:

13       A.    Enter an order certifying the proposed Class (and subclasses, if applicable),

14            designating Plaintiff as the class representative, and designating the undersigned as

15            class counsel;

16       B.    Enter an order awarding Plaintiff and the class members their actual damages, treble

17            damages, and/or any other form of monetary relief provided by law;

18       C.    Declare that Defendant is financially responsible for notifying all Class members of

19            the problems with the Products;

20       D.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the

21            ill-gotten profits it received from the sale of the Products, or order Defendant to

22            make full restitution to Plaintiff and the members of the Class;

23       E.    Defendant shall audit and reassess all prior customer claims regarding the Products,

24            including claims previously denied in whole or in part;

25       F.    An order awarding Plaintiff and the classes pre-judgment and post-judgment interest

26            as allowed under the law;

27

28

---

1

2

G.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of
this action, including expert witness fees; and

3

H.      For such other and further relief as this Court deems just and appropriate.

4

**<u>JURY DEMAND</u>**

5

Plaintiff hereby demands a trial by jury on all issues so triable.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Dated:  February 28, 2020                Respectfully Submitted,

2                                           By: _____/s/ *Jonathan Shub*_____

3                                                   Jonathan Shub

4                                           Jonathan Shub (State Bar No. 237708)
                                            Kevin Laukaitis*
5                                           **KOHN, SWIFT & GRAF, P.C.**
                                            1600 Market Street, Suite 2500
6                                           Philadelphia, PA 19103
                                            Telephone: (215) 238-1700
7                                           E-mail: jshub@kohnswift.com
8                                                     klaukaitis@kohnswift.com

9                                           Nick Suciu III*
                                            **BARBAT, MANSOUR & SUCIU PLLC**
10                                          1644 Bracken Rd.
                                            Bloomfield Hills, Michigan 48302
11                                          Telephone: (313) 303-3472
                                            nicksuciu@bmslawyers.com
12

13                                          Gregory F. Coleman*
                                            Rachel Soffin*
14                                          **GREG COLEMAN LAW PC**
                                            First Tennessee Plaza
15                                          800 S. Gay Street, Suite 1100
                                            Knoxville, Tennessee 37929
16                                          Telephone: (865) 247-0080
                                            greg@gregcolemanlaw.com
17                                          rachel@gregcolemanlaw.com
18

19                                          ***Admitted by Pro Hac Vice***

20                                          *Counsel For Plaintiff And The Class*

21

22

23

24

25

26

27

28

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Jonathan Shub, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a shareholder in Kohn, Swift & Graf, P.C., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Philadelphia, Pennsylvania this 28th day of February, 2020.

      */s/ Jonathan Shub*
Jonathan Shub